Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/19/2024 09:09 AM CDT

Lancaster County, Nebraska, appellee, v.
Shawn Slezak and Local 1536 Engineering
of the International Brotherhood of
Electrical Workers, appellants.

___ N.W.3d ___

Filed July 19, 2024.    No. S-23-694.

1. **Judgments: Jurisdiction: Appeal and Error.** Determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach its conclusions independent from a trial court.

2. **Administrative Law: Appeal and Error.** In reviewing an administrative agency decision on a petition in error, both the district court and the appellate court review the decision to determine whether the agency acted within its jurisdiction and whether sufficient, relevant evidence supports the decision of the agency.

3. **Administrative Law: Evidence.** The evidence is sufficient, as a matter of law, if an administrative tribunal could reasonably find the facts as it did on the basis of the testimony and exhibits contained in the record before it.

4. **Administrative Law: Appeal and Error.** The reviewing court in an error proceeding is restricted to the record before the administrative agency and does not reweigh evidence or make independent findings of fact.

5. **Administrative Law: Judgments: Words and Phrases.** An administrative agency decision must not be arbitrary and capricious. Agency action is "arbitrary and capricious" if it is taken in disregard of the facts or circumstances of the case, without some basis which would lead a reasonable and honest person to the same conclusion.

6. **Judgments: Appeal and Error.** Appellate courts independently review questions of law decided by a lower court.

7. **Administrative Law: Judgments.** Whether an agency decision conforms to the law is by definition a question of law.

8. **Jurisdiction: Appeal and Error.** Where a lower court lacks subject matter jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.

9. **Administrative Law: Time: Appeal and Error.** Pursuant to Neb. Rev. Stat. § 25-1905 (Reissue 2016), filing of the praecipe for transcript with the clerk of the district court satisfies the 30-day appeal requirement, even if the tribunal does not timely prepare and furnish the transcript to the appellants for filing with the clerk of the district court.

10. **Public Officers and Employees: Appeal and Error.** Where a duty is placed upon a public officer to perform acts necessary to perfect an appeal, the public officer's failure to perform cannot be charged to the litigant or operate to defeat the appeal.

11. **Administrative Law: Evidence: Appeal and Error.** The proper inquiry for an appellate court when reviewing the decision of an administrative agency on a petition in error is whether there was sufficient, relevant evidence to support the conclusion that the agency did make and not whether the evidence would support a contrary conclusion.

12. ____: ____: ____. When reviewing a decision of an administrative agency, as in reviewing a jury verdict, if there is sufficient evidence to support the decision, the reviewing court must affirm even if it may be of the opinion that had it been the trier of the case, it would have reached a different conclusion.

13. **Breach of Contract: Damages.** In a breach of contract case, the ultimate objective of a damages award is to put the injured party in the same position the injured party would have occupied if the contract had been performed, that is, to make the injured party whole.

14. **Stipulations.** Stipulations are not binding on the rights of a person who is not a party to a proceeding and who does not assent to the stipulations.

15. **Judgments: Appeal and Error.** An appellate court may affirm a lower court's ruling that reaches the correct result, albeit based on different reasoning.

Appeal from the District Court for Lancaster County, DARLA S. IDEUS, Judge. Affirmed.

John E. Corrigan, of Dowd & Corrigan, L.L.C., for appellants.

Patrick F. Condon, Lancaster County Attorney, Ashley J. Bohnet, and Delaney Baumgartner, Senior Certified Law Student, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Funke, J.

## INTRODUCTION

This appeal arises from a grievance regarding a county's failure to prepare an employee's performance evaluation by the date prescribed under a collective bargaining agreement (CBA). A personnel policy board found that preparing the evaluation after the deadline was a breach of contract and, as a remedy, awarded the employee a merit increase, even though the rating given to the employee in the evaluation did not warrant a merit increase. The county then filed a petition in error challenging the board's decision. The district court agreed with the county that the remedy was improper and reversed the board's decision. The employee and the labor union to which he belongs appeal the district court's order, arguing primarily that the board's decision was supported by sufficient relevant evidence and, thus, should not have been reversed. We disagree and affirm the order of the district court.

## BACKGROUND

### Factual Background

Shawn Slezak worked for Lancaster County, Nebraska, as a mechanic in a position covered by a CBA between the county and Local 1536 Engineering of the International Brotherhood of Electrical Workers (Local 1536). The CBA authorized grievances to be filed by or on behalf of employees about "matters of interpretation or uniform enforcement of express provisions" of the CBA, the Lancaster County Personnel Rules, or the "conditions of employment."

The personnel rules, in turn, required that the performance of "status employees" be reviewed annually and that

department heads recommend the "advancement in salary" of employees who met the requirements for advancement and had not reached the maximum pay grade for their position. The personnel rules also prescribed that the date on which employees receive their "annual performance evaluation and potential merit increase" was their "[e]ligibility date" or "anniversary date," which was generally the date when the employee obtained status in a classified position. An "Employee Position Description [and] Performance Evaluation Manual" further prescribed that the annual or merit evaluation be prepared 3 weeks prior to the eligibility date and that the "rating supervisor" was responsible for the evaluation.

There does not appear to be any dispute that at the time of the events described below, Slezak was a status employee who was eligible for a potential merit increase, or that his eligibility date was November 26.

## Slezak's Performance Evaluation for 2021 Leads to Grievance

Slezak's direct supervisor made four attempts to complete Slezak's performance evaluation between November 24, 2021, and January 5, 2022. The first three times, higher-level supervisors declined to sign off on the evaluation because of disparities between the numerical rating given to Slezak and written comments on the evaluation. On the fourth attempt, higher-level supervisors became concerned that the evaluation was "bias[ed]," because Slezak's direct supervisor made comments indicating that his rating was influenced by the fact that Slezak had three children and a lengthy commute. Thereafter, higher-level supervisors completed Slezak's performance evaluation, which gave Slezak a rating below the threshold required for a merit increase.

Slezak filed a grievance alleging, liberally construed, that his annual performance evaluation was untimely and was not completed by his direct supervisor.

The county denied the grievance on the ground that it failed to allege a violation of the CBA. The county also asserted

that "performance evaluations may not be grieved" and that "[e]valuating and rating" employee performance were management rights under the CBA and the personnel rules.

## SLEZAK AND LOCAL 1536
### APPEAL TO BOARD

Slezak and Local 1536 appealed to the Lancaster County Personnel Policy Board, seeking a hearing on whether the matter was grievable, as well as the alleged issues with Slezak's evaluation.

Initially, the board heard arguments as to whether it had jurisdiction over the grievance. Slezak and Local 1536 argued that the matter was grievable under the CBA because it involved the "[c]onditions of employment." Specifically, Slezak and Local 1536 argued that "those things that touch upon the economic life of the employee" constituted conditions of employment. Slezak and Local 1536 also pointed to language in the CBA effectively requiring that employee performance be evaluated annually and that eligible employees be recommended for merit increases. The county disagreed, essentially arguing that the dispute concerned the substance of Slezak's evaluation and, thus, was not grievable. The board agreed that it had historically taken the view that performance evaluations were not grievable. But one board member recalled the board's having heard challenges to untimely performance evaluations in the past. Ultimately, the board decided to hear Slezak's grievance, but limited its review to "the issue of [whether he was] entitled to his merit increase as a result of the failure to get the evaluation done in a timely manner."

Several months later, the board held a hearing at which it received evidence and heard testimony from Slezak and several witnesses about the merits of the grievance. That testimony is summarized below. Additional evidence is discussed later in the opinion as it relates to the parties' arguments on appeal.

Slezak testified that "[t]he majority" of his prior evaluations were 1 to 3 months late. Slezak also testified that all those evaluations were positive and that thus, "it wouldn't [have made] much . . . sense" for him to grieve that they were not prepared on time. Other witnesses testified similarly that while the county sought to prepare performance evaluations on time, approximately 10 percent of evaluations were 6 to 8 weeks late.

The witnesses also testified that higher level supervisors were tasked with ensuring that direct supervisors "[gave] accurate scores" and that there frequently were discrepancies between numerical scores and written comments. The witnesses stated that the evaluations completed by Slezak's direct supervisor often had such discrepancies and were sent back for him to correct the issue. According to the witnesses, Slezak's direct supervisor was not instructed to lower Slezak's score or not give him a raise, but, rather, was instructed to ensure the numbers matched the comments. The witnesses also testified that when employees qualified for a merit increase based on a performance evaluation that was prepared after the deadline, the employees were awarded a salary increase retroactive to their eligibility date.

The board adjourned at the end of the hearing, but when it reconvened a month later, it sustained Slezak's grievance on the ground that his late evaluation constituted a breach of contract. As a remedy, the board granted Slezak a merit increase retroactive to November 26, 2021, apparently on the theory that when an evaluation was late, "all [the board had] to look at" was the previous year's evaluation.

The board's decision was an oral one. It was not reduced to writing, as is required under the personnel rules.

## County Files Petition in Error

The county then filed a petition in error in the district court for Lancaster County, assigning several errors by the board. As is relevant to the present appeal, the county alleged that

the board's decision to provide a retroactive merit increase was not supported by the CBA, the personnel rules, or the manual.

Contemporaneously with the petition in error, the county filed a "Praecipe for Transcript [and] Bill of Exceptions" with the board, requesting "[t]he final order of decision of the [b]oard," among other things, and asking that all documents be authenticated as required under Neb. Rev. Stat. § 25-1906 (Reissue 2016). The county also filed a copy of the praecipe in the district court that same day. Several volumes containing the proceedings before the board and the documentary exhibits from those proceedings were subsequently provided to the county, which filed them in the district court. However, as Slezak and Local 1536 observe on appeal, those filings were not authenticated by the board's secretary or "any other official" of the board.[1]

The district court reversed the board's decision on the ground that the "remedy . . . was inappropriate." The district court observed that the board viewed Slezak's grievance as a claim for breach of contract and properly recognized that the remedy for such a breach was to "make the wronged party whole." But in the district court's view, granting Slezak a retroactive merit increase made him "more than whole." In reaching this conclusion, the district court reasoned that Slezak did not receive a merit increase because his score was too low, and not because the review was late. The district court based this conclusion partly on opinions from other jurisdictions finding that late evaluations, in and of themselves, do not adversely affect employees. The district court also observed that Slezak himself had "effectively admit[ted] as much," insofar as he acknowledged that the county had a practice of awarding retroactive merit increases where the evaluation was not prepared on time, but the employee qualified for a merit increase.

---

[1] Supplemental brief for appellants at 8.

The district court similarly found that Slezak's claim that his performance evaluation was required to have been completed by his direct supervisor was "inconsistent with the [c]ounty's reserved management rights under the CBA," among other things.

Slezak and Local 1536 timely appealed, and we moved the matter to our docket.[2]

Thereafter, Slezak and Local 1536 moved for expanded briefing regarding whether the district court had jurisdiction over the county's petition in error, insofar as "there does not appear to be a [t]ranscript of the [board's] final order duly authenticated by the [board] in accordance with" § 25-1906. We granted that motion, and the parties provided further briefing, which we have reviewed.

## ASSIGNMENTS OF ERROR

Slezak and Local 1536 assign, restated, that the district court (1) erred in reversing the board's decision, because there was a "reasonable and fact based rationale relied upon by the [b]oard that supported the remedy . . . ordered," and (2) erred insofar as it based its decision on the argument that Slezak's performance evaluation was not completed by his direct supervisor, because Slezak made no such argument on appeal.

## STANDARD OF REVIEW

[1] Determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach its conclusions independent from a trial court.[3]

[2-4] In reviewing an administrative agency decision on a petition in error, both the district court and the appellate court review the decision to determine whether the agency acted within its jurisdiction and whether sufficient, relevant

---

[2] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2022).

[3] *Paxton v. Paxton*, 314 Neb. 197, 989 N.W.2d 420 (2023).

evidence supports the decision of the agency.[4] The evidence is sufficient, as a matter of law, if an administrative tribunal could reasonably find the facts as it did on the basis of the testimony and exhibits contained in the record before it.[5] The reviewing court in an error proceeding is restricted to the record before the administrative agency and does not reweigh evidence or make independent findings of fact.[6]

[5] An administrative agency decision must not be arbitrary and capricious.[7] Agency action is "arbitrary and capricious" if it is taken in disregard of the facts or circumstances of the case, without some basis which would lead a reasonable and honest person to the same conclusion.[8]

[6,7] Appellate courts independently review questions of law decided by a lower court.[9] Whether an agency decision conforms to the law is by definition a question of law.[10]

## ANALYSIS

### District Court Had Subject Matter Jurisdiction

[8] We begin with the question of whether the district court had subject matter jurisdiction over the county's petition in error, because if the district court lacked subject matter jurisdiction, this court also lacks such jurisdiction. Where a lower court lacks subject matter jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.[11]

---

[4] *Douglas County v. Archie*, 295 Neb. 674, 891 N.W.2d 93 (2017).

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Charter West Bank v. Riddle*, 314 Neb. 263, 989 N.W.2d 428 (2023).

Slezak and Local 1536 argue that the district court lacked subject matter jurisdiction over the present matter because the district court "did not have before it an authenticated transcript of the proceedings before the [board]," containing the final order of the board.[12] As such, Slezak and Local 1536 argue that the district court had no jurisdiction to proceed further than to dismiss the county's petition in error. The county, on the other hand, argues that it was "not at fault for the lack of an authenticated transcript" containing a copy of the board's final order, because its praecipe for a transcript and bill of exceptions expressly requested this.[13] Thus, the county argues that the board's failure to perform its duty under § 25-1906 to provide an authenticated transcript cannot be charged to the county or defeat the county's petition in error. We agree with the county that the district court had subject matter jurisdiction here and that we thus have jurisdiction over this appeal.

Slezak and Local 1536's argument that subject matter jurisdiction is lacking is based on *Anania v. City of Omaha*,[14] one in a long line of cases wherein we discussed earlier versions of the statutes presently codified in Neb. Rev. Stat. § 25-1905 (Reissue 2016) and § 25-1906.[15] When we issued our opinion

---

[12] Supplemental brief for appellants at 9.

[13] Supplemental brief for appellee at 9.

[14] *Anania v. City of Omaha*, 170 Neb. 160, 102 N.W.2d 49 (1960).

[15] See, e.g., *Brown v. Board of Education*, 231 Neb. 108, 435 N.W.2d 184 (1989); *School Dist. No. 39 v. Farber*, 215 Neb. 791, 341 N.W.2d 320 (1983); *Marcotte v. City of Omaha*, 196 Neb. 217, 241 N.W.2d 838 (1976); *Friedman v. State*, 183 Neb. 9, 157 N.W.2d 855 (1968); *Adams v. City of Omaha*, 179 Neb. 684, 139 N.W.2d 885 (1966); *Ostler v. City of Omaha*, 179 Neb. 515, 138 N.W.2d 826 (1965); *Dlouhy v. City of Fremont*, 175 Neb. 115, 120 N.W.2d 590 (1963); *McDonald v. Rentfrow*, 171 Neb. 479, 106 N.W.2d 682 (1960); *From v. Sutton*, 156 Neb. 411, 56 N.W.2d 441 (1953); *Fike v. Ott*, 76 Neb. 439, 107 N.W. 774 (1906); *Smith v. Delane*, 74 Neb. 594, 104 N.W. 1054 (1905); *Brabham v. Custer County*, 3 Neb. (Unoff.) 801, 92 N.W. 989 (1902).

in *Anania*, § 25-1905 (1943) required, in relevant part, that plaintiffs in error file with their petitions "a transcript of the proceedings containing the final judgment or order sought to be reversed, vacated, or modified," while § 25-1906 (1943) required that officers of the tribunal whose judgment or order was appealed furnish "authenticated transcript[s] of the proceedings." Particularly when confronted with cases where the petitioner had failed to timely file an authenticated transcript containing a copy of the final judgment or order appealed from, we construed these statutory requirements to be mandatory and jurisdictional.[16] In such cases, we found that without the timely filing of an authenticated transcript—or a record of the proceedings below[17]—containing a copy of the final judgment or order appealed from, the court in which a petition in error was filed generally had no jurisdiction to proceed further than to dismiss the petition in error.[18]

[9] However, some years after our decision in *Anania*, the Legislature amended § 25-1905 to allow plaintiffs in error to file with their petition either a transcript of the proceedings or a "praecipe directing the tribunal, board, or officer to prepare the transcript of the proceedings."[19] We subsequently construed this amended language, in conjunction with § 25-1906 (Reissue 2016), to mean that the "jurisdictional requirements for the timely filing of a petition in error" were met where the petitioner in error filed a praecipe for transcript within

---

[16] *Anania, supra* note 14.

[17] *Dlouhy, supra* note 15 (record of proceedings before tribunal is transcript of proceedings that must be filed with district court in petition in error).

[18] *Id*. But see *Glup v. City of Omaha*, 222 Neb. 355, 383 N.W.2d 773 (1986) (recognizing possibility that petitioner in error could demonstrate that lack of timely filed transcript was result of failure in performance of public duty owed by official charged with preparing or furnishing transcript).

[19] See 1991 Neb. Laws, L.B. 561, § 1. See, also, § 25-1905 (Reissue 2016).

30 days of the final judgment or order appealed from.[20] Or otherwise stated, pursuant to § 25-1905, filing of the praecipe for transcript with the clerk of the district court satisfies the 30-day appeal requirement, even if the tribunal does not timely prepare and furnish the transcript to the appellants for filing with the clerk of the district court.[21]

[10] We take a similar view of the timely filing of a praecipe for transcript where, as here, the tribunal fails to produce an authenticated copy of the transcript containing a copy of the final order or judgment appealed from without any negligence on the part of the petitioner. Slezak and Local 1536 do not dispute that the county timely filed its praecipe for a transcript and bill of exceptions with the district court along with its petition in error, as contemplated by § 25-1905. That praecipe expressly requested that the transcript and bill of exceptions include "[t]he final order of decision of the [b]oard" and be authenticated as required under § 25-1906. The bill of exceptions ultimately provided to the county was not a "transcript for purposes of § 25-1905," as the county acknowledges on appeal.[22] However, as we have explained in other contexts, where a duty is placed upon a public officer to perform acts necessary to perfect an appeal, the public officer's failure to perform cannot be charged to the litigant or operate to defeat the appeal.[23] This rule holds absent circumstances not alleged to have been present here.[24]

---

[20] *McNally v. City of Omaha*, 273 Neb. 558, 565, 731 N.W.2d 573, 581 (2007). See, also, *River City Life Ctr. v. Douglas Cty. Bd. of Equal.*, 265 Neb. 723, 658 N.W.2d 717 (2003); *Meints v. City of Beatrice*, 20 Neb. App. 129, 820 N.W.2d 90 (2012).

[21] *McNally, supra* note 20.

[22] Supplemental brief for appellee at 8.

[23] *Purdy v. City of York*, 243 Neb. 593, 500 N.W.2d 841 (1993).

[24] *State v. Brown*, 312 Neb. 654, 980 N.W.2d 834 (2022) (failure of public officer to perform duty may operate to defeat appeal where negligence of appellant or appellant's agent concurs with that of officer).

Granted, the board's final order was never reduced to writing, as required under the personnel regulations. However, the parties forfeited any right to a final order reduced to writing that they might otherwise have had by failing to raise this issue before the district court.[25]

## District Court Did Not Err in Reversing Board's Decision as to Remedy

We next consider Slezak and Local 1536's argument that the district court exceeded its scope of review by reversing the board's decision as to the proper remedy for the breach of the CBA that the board found to have occurred here. Slezak and Local 1536 argue that the board's decision to grant him a retroactive merit increase was supported by "sufficient relevant evidence" and, thus, should not have been reversed by the district court.[26] The county, in contrast, argues that Slezak suffered no harm from the late evaluation and that the board's remedy thus made him "'more than whole.'"[27] Assuming, without deciding, that the late evaluation was a breach of contract, we agree with the county that the board's remedy was not consistent with the ultimate objective of a damages award in the case of a breach of contract.

[11,12] Slezak and Local 1536 correctly suggest that if two inconsistent conclusions could have been drawn from the evidence, the district court would have exceeded its scope of review in substituting the conclusion it would have drawn from the evidence for the board's conclusion. As we have explained, the proper inquiry for an appellate court when reviewing the decision of an administrative agency on a petition in error is whether there was sufficient, relevant evidence to support the conclusion that the agency did make and not

---

[25] See *State v. Horne*, 315 Neb. 766, 1 N.W.3d 457 (2024) (forfeiture is failure to make timely assertion of right, while waiver is intentional relinquishment of known right).

[26] Brief for appellants at 17.

[27] Brief for appellee at 13.

whether the evidence would support a contrary conclusion.[28] When reviewing a decision of an administrative agency, as in reviewing a jury verdict, if there is sufficient evidence to support the decision, the reviewing court must affirm even if it may be of the opinion that had it been the trier of the case, it would have reached a different conclusion.[29]

[13] However, the evidence here cannot be seen to support the board's decision, insofar as the remedy crafted by the board exceeded the scope of a damages award in a breach of contract case. In a breach of contract case, the ultimate objective of a damages award is to put the injured party in the same position the injured party would have occupied if the contract had been performed, that is, to make the injured party whole.[30] Awarding Slezak a retroactive merit increase did not meet that ultimate objective, because there was uncontroverted evidence that Slezak would not have received a merit increase based on the evaluation he ultimately received for 2021 if that evaluation had been prepared by the date required under the CBA. Slezak's score on the late-completed evaluation was below the threshold required for a merit increase, and it was this fact, and not the fact that the county was late in preparing his evaluation, that caused his injury. Courts in other jurisdictions have taken a similar view, finding that it is the contents of the evaluation, and not the evaluation's untimeliness per se, that may adversely affect employees.[31]

As to the specific evidence that Slezak and Local 1536 cite in support of the board's decision, we take a different view. Slezak and Local 1536 point to an exhibit that they maintain demonstrates that the county stipulated to a retroactive

---

[28] *Douglas County, supra* note 4.

[29] *Id*.

[30] *Dietzel Enters. v. J. A. Wever Constr.*, 312 Neb. 426, 979 N.W.2d 517 (2022).

[31] See, e.g., *Sullivan v. Department of Transp.*, 71 Wash. App. 317, 858 P.2d 283 (1993) (declining employees' requests to remove evaluations from their personnel files because those evaluations were late).

merit increase as the remedy for a prior grievance wherein an employee grieved "both . . . the fact that the performance evaluation was late and that she received an unsatisfactory performance score."[32] Slezak and Local 1536 claim that the exhibit shows a "past practice" of awarding merit increases when an evaluation is late even if the evaluation is unsatisfactory.[33] The county states in its brief on appeal that it "stipulated to the facts in [the previous] case,"[34] which we take to mean that the county agrees that the grievance in that case concerned both the timeliness of the evaluation and the employee's rating. However, we do not see anything in the exhibit itself that suggests that the previous grievance was based partly on the evaluation's being unsatisfactory.

[14] But as the county observes, while it may have stipulated that a merit increase was an appropriate remedy in the previous case, it did not stipulate that a merit increase was the appropriate remedy in the present case. This is a separate proceeding. Stipulations are not binding on the rights of a person who is not a party to a proceeding and who does not assent to the stipulations.[35]

Slezak and Local 1536 also point to Slezak's 2020 annual performance evaluation, which was his most recently completed evaluation as of November 26, 2021. There was evidence showing that this evaluation met the threshold for a merit increase, and Slezak and Local 1536 note that one board member, in particular, cited this fact "in voicing his support" for awarding Slezak a retroactive merit increase.[36] However, the evidence also showed that Slezak already received a merit increase based on that evaluation.

---

[32] Brief for appellants at 17.

[33] *Id*.

[34] Brief for appellee at 12.

[35] *Lincoln Lumber Co. v. Lancaster*, 260 Neb. 585, 618 N.W.2d 676 (2000).

[36] Brief for appellants at 18.

### THERE ARE GROUNDS TO AFFIRM DISTRICT COURT'S ORDER EVEN IF DISTRICT COURT ERRED IN CONSIDERING "MANNER" OF SLEZAK'S EVALUATION

Finally, we turn to Slezak and Local 1536's argument that the district court erred in addressing Slezak's argument that the manner of his evaluation did not comport with the CBA because the evaluation was not prepared by his direct supervisor. In particular, Slezak and Local 1536 take issue with the district court's suggestion that he might not have "adequately raised that issue in these error proceedings."[37] Instead, Slezak and Local 1536 argue that it was the county's burden, as the petitioner in error, to raise any issues before the district court.

[15] While Slezak did raise the manner of his evaluation with the board, the board's decision was not based on this issue, and the county's petition in the district court did not assign any error related to the board's handling of the issue. However, even if the district court erred in addressing the manner of Slezak's evaluation, such error would not warrant the reversal of the district court's order. An appellate court may affirm a lower court's ruling that reaches the correct result, albeit based on different reasoning.[38] Here, we agree that reversal of the board's remedy was warranted because it was not consistent with the ultimate objective of a damages award in the case of a breach of contract, regardless of which supervisor completed the evaluation.

## CONCLUSION

Because the board's remedy made Slezak "more than whole," the district court did not err in reversing the board's decision. Any error in the district court's discussion of the manner of Slezak's evaluation does not warrant reversal of the district

---

[37] *Id*. at 21.

[38] *Edwards v. Estate of Clark*, 313 Neb. 94, 982 N.W.2d 788 (2022).

court's order, because the district court reached the correct result. Accordingly, we affirm the order of the district court.

AFFIRMED.

Cassel, J., concurring.

I have some doubt that the County Civil Service Act[1] or the rules and regulations adopted by Lancaster County pursuant to that act empower a personnel policy board to adjudicate a grievance asserting a claim for breach of contract. Because I do not read the court's opinion to so hold, I join the opinion based on that understanding.

---

[1] Neb. Rev. Stat. §§ 23-2517 to 23-2533 (Reissue 2022).