Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/06/2025 09:08 AM CDT

COUNTY OF HAYES, NEBRASKA, A POLITICAL SUBDIVISION
OF THE STATE OF NEBRASKA, APPELLANT, V. COUNTY OF
FRONTIER, NEBRASKA, A POLITICAL SUBDIVISION OF
THE STATE OF NEBRASKA, AND FRONTIER COUNTY,
NEBRASKA, BOARD OF COMMISSIONERS, APPELLEES.

___ N.W.3d ___

Filed June 6, 2025.    No. S-24-357.

1. **Jurisdiction.** Compliance with Neb. Rev. Stat. §§ 25-1903 and 25-1905 (Reissue 2016) is jurisdictional.

2. **Administrative Law: Appeal and Error.** In reviewing a decision based on a petition in error, an appellate court determines whether the inferior tribunal acted within its jurisdiction and whether the inferior tribunal's decision is supported by sufficient relevant evidence.

3. **Administrative Law: Judgments.** An administrative agency decision must not be arbitrary and capricious.

4. **Administrative Law: Appeal and Error.** The reviewing court in an error proceeding is restricted to the record before the administrative agency and does not reweigh evidence or make independent findings of fact.

5. **Administrative Law: Evidence.** The evidence is sufficient, as a matter of law, if an administrative tribunal could reasonably find the facts as it did on the basis of the testimony and exhibits contained in the record before it.

6. **Appeal and Error.** Rather than a "review on appeal" under Neb. Rev. Stat. §§ 25-1911 to 25-1937 (Reissue 2016 & Cum. Supp. 2024), a petition in error is in the nature of a new action, in that a petition in error is required to be perfected, with a summons required to be issued upon the written praecipe of the petitioner in error.

7. ____. A petition in error is not a right of action and does not exist at common law; it is a legislatively created method of review.

8. **Judgments: Final Orders: Appeal and Error.** A petition in error in the district court to review a judgment or final order of an inferior tribunal

is in its nature an independent proceeding having for its purpose the removal of the record from an inferior to a superior tribunal to determine whether the judgment or final order entered is in accordance with the law.

9. **Appeal and Error: Words and Phrases.** A petition in error is in a broader sense an appeal, because it is the removal of proceedings from one court or tribunal to another for review.

10. **Judgments: Final Orders: Appeal and Error.** The reviewing court may reverse, vacate, or modify the lower judicial tribunal's judgment or final order for error on the record.

11. **Records: Appeal and Error.** In an error proceeding in the district court, the district court must look to the transcript of the proceedings of the inferior tribunal filed with the petition in error to ascertain what happened there.

12. ____: ____. A proceeding on petition in error is ordinarily tried on the appropriate and relevant questions of law set out in the petition in error and appearing in the transcript.

13. **Appeal and Error.** Neb. Rev. Stat. § 25-1903 (Reissue 2016) requires that a petition in error contain the assignments of errors complained of.

14. ____. The alleged errors in a petition in error must be assigned with particularity.

15. ____. Alleged errors argued in a brief before the district court but not assigned in the petition in error will not be considered.

16. **Jurisdiction: Appeal and Error.** Where a lower court lacks jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.

17. **Courts: Appeal and Error.** Where a cause has been appealed to a higher appellate court from a district court exercising appellate jurisdiction, only issues properly presented to and passed upon by the district court may be raised on appeal to the higher court.

18. **Appeal and Error.** To be considered by an appellate court, the party asserting an alleged error must both specifically assign and specifically argue it in the party's initial brief.

19. **Courts: Appeal and Error.** On a petition in error, the district court acts in an appellate capacity and employs the same deferential standard of review that an appellate court uses.

20. **Administrative Law: Judgments: Words and Phrases.** Agency action is arbitrary and capricious if it is taken in disregard of the facts or circumstances of the case, without some basis which would lead a reasonable and honest person to the same conclusion.

21. **Records: Appeal and Error.** Nothing can be added to or taken from the record by simple averment in a petition in error, and extrinsic facts pleaded therein do not form part of the record in which an order is sought to be reversed.

22. **Pleadings: Appeal and Error.** An answer or other pleading by a defendant in error can have no function other than to advise the court of events that have occurred after the order appealed from, such as acceptance of benefits.

Appeal from the District Court for Frontier County: Matthew D. Neher, Judge. Affirmed as modified.

D. Eugene Garner, Hayes County Attorney, for appellant.

Stephen D. Mossman and Andrew R. Spader, of Mattson Ricketts Law Firm, L.L.P., and Whitney A. Schroeder, Frontier County Attorney, for appellees.

Funke, C.J., Miller-Lerman, Cassel, Stacy, Papik, Freudenberg, and Bergevin, JJ.

Freudenberg, J.

## I. INTRODUCTION

A Nebraska county filed a claim under Neb. Rev. Stat. § 39-827 et seq. (Reissue 2016), seeking reimbursement from a neighboring county for one-half of the cost of replacing a bridge. The neighboring county's board of commissioners denied the claim, and the requesting county filed a petition in error in the district court of the neighboring county for review of the board's decision. The district court denied and dismissed the petition in error. We affirm the judgment of the district court as modified.

## II. BACKGROUND

This appeal involves a dispute between the County of Hayes, Nebraska (Hayes), and the County of Frontier, Nebraska (Frontier), as to whether Frontier had a statutory duty to pay for one-half of the replacement cost of a bridge located in Hayes. Central to the dispute is §§ 39-827 through 39-830,

which govern the construction and repair of bridges in or near two counties.

Section 39-827 provides, "Bridges over streams which divide counties, bridges over streams on roads on county lines, and bridges over streams near county lines, in which both counties are equally interested, shall be built and repaired at the equal expense of such counties."

Neb. Rev. Stat. § 39-1403 (Reissue 2016) sets forth circumstances when a road shall be considered on a county line, even though a portion deviates to one side of the county line due to topography or to being at the crossing of any stream of water:

> Any public road that is or shall hereafter be laid out on a county or township line shall be held to be a road on a county or township line, although, owing to the topography of the ground along the county or township line, or at the crossing of any stream of water, the proper authorities, in establishing or locating such road, may have located a portion of the same to one side of such county or township line.

Section 39-828 describes that county boards of adjoining counties may enter into joint contracts for the purpose of building or repairing bridges as described in § 39-827, which may be enforced in law or equity. Section 39-828 states in relevant part, "For the purpose of building or keeping in repair such bridge or bridges, it shall be lawful for the county boards of such adjoining counties to enter into joint contracts."

Section 39-828 further provides that if an adjoining county refuses to enter into a joint contract, one adjoining county may repair the bridge and recover up to one-half the expense from the other adjoining county, stating:

> If either of such counties shall refuse to enter into contracts to carry out the provisions of this section for the repair of any such bridge or bridges, it shall be lawful for the other said counties to enter into such contract for all needful repairs and recover by suit from the county

so in default such proportion of the cost of making such repairs as it ought to pay, not exceeding one-half of the full amount so expended.[1]

Section 39-829 describes the enforcement of joint contracts that adjoining counties have voluntarily entered into pursuant to § 39-828:

If the county board of either of such counties, after reasonable notice in writing from the county board of any other such county, shall neglect or refuse to build or repair any such bridge, when any contract or agreement has been made in regard to the same, it shall be lawful for the board so giving notice to build or repair the same, and to recover, by suit, one-half, or such amount as shall have been agreed upon, of the expense of so building or repairing such bridge, with cost of suit and interest from the time of the completion thereof, from the county so neglecting or refusing.

### 1. HAYES' PETITION IN ERROR

Frontier's board of commissioners (Frontier Board) denied a claim by Hayes to recover one-half of the replacement cost Hayes had incurred in repairing the disputed bridge, on the grounds that it was not a bridge as described by §§ 39-827 and 39-1403, and Hayes timely filed with the district court a "[p]etition in [e]rror." The petition in error did not designate assignments of error. Instead, Hayes set forth various factual allegations under the introduction that Hayes "alleges as follows." Hayes then "pray[ed]" that the district court enter (1) an order determining that the Frontier Board erred in denying its claim, (2) a judgment against Frontier in the amount of $183,109.50, (3) a mandamus compelling Frontier to pay such amount, and (4) other relief as the court deemed just and equitable.

---

[1] See, also, *Brown County v. Keya Paha County*, 88 Neb. 117, 129 N.W. 250 (1910).

Hayes' petition in error alleged the bridge was "located on . . . Ave 377 . . . which spans the Willow Creek and/or Dry Creek in the SE¼NE¼ of Section 13-T5N-R31W, in Hayes . . . approximately 60 feet west of said county line." The allegations of the petition in error also set forth that Hayes and Frontier had previously entered into an "Interlocal Cooperation Agreement pertaining to the general road maintenance and signage purposes on . . . Ave 377" (emphasis omitted) (hereinafter referred to as the "Road Agreement") and that "Hayes . . . Ave 377/Frontier County Road 378 ("Ave 377") constitutes a road on the county line between Hayes . . . and Frontier."

The petition in error alleged that Hayes sent notice to Frontier of the need to replace the bridge and requested that Frontier share in the cost of replacement, that it submitted an "Interlocal Cooperation Agreement" to Frontier to replace the bridge (hereinafter referred to as the "Proposed Bridge Agreement"), and that Frontier refused to enter into the Proposed Bridge Agreement. The petition further alleged that Frontier gave Frontier notice of its intent to construct the bridge, Hayes solicited bids, Hayes awarded a construction contract, and Hayes completed the replacement of the bridge with a concrete box culvert in accordance with the recommendations of a licensed engineer. The petition in error alleged that one-half of the cost of replacement (minus matching funds from the State) was $183,109.50. Hayes alleged its claim against Frontier had been denied by the Frontier Board and the Frontier Board's denial of its claim "was in error, was arbitrary and capricious and contrary to law, including without limitation . . . § 39-827 et seq." (Emphasis omitted.)

Hayes did not allege in its petition in error that Frontier was equally interested in the bridge. It did not allege that the bridge was located over a stream *near* county lines. It did not allege that it had requested an evidentiary hearing before the Frontier Board, that it had been deprived of due process of law, or that the Frontier Board violated any statutory provisions relating to conducting a closed session. It did not allege

that by failing to pay for one-half of the bridge repair, Frontier had breached the Road Agreement.

Within 30 days of the petition in error, Frontier filed an answer in the district court as "[d]efendant in [e]rror." Frontier's answer generally asked the district court to dismiss the petition with prejudice at Hayes' cost. Frontier admitted in its answer that the bridge was located on "Ave 377" (hereinafter referred to as "Avenue 377") but denied that Avenue 377 is a road on the county line, pointing out that it "deviates at times up to approximately one-half mile west of the Frontier/Hayes county line into Hayes County." Frontier "admit[ted] that it entered into [the Road Agreement] with Hayes" but "further allege[d] that the terms of the [Road Agreement] speak for themselves" and "denie[d] the balance of Paragraph 3."

(a) Attachments to Petition in Error

Exhibit A attached to the petition in error reflects the Road Agreement between Hayes and Frontier that was entered into in 2014. The Road Agreement addressed that "it would be in the best interest of Hayes . . . and Frontier . . . that the roads on the border of said Counties be divided for road maintenance and signing purposes." Under the Road Agreement, "any signing, that is necessary, on said roads intersecting with said county line road for the purposes of warning and controlling traffic, shall be installed and maintained by the county maintaining and signing the intersecting road." Further, "Hayes and Frontier . . . agree to supply the needed gravel and routine maintenance to their designated portions of the county line road." The maintenance or replacement of bridges was not specifically addressed in the Road Agreement.

In the Road Agreement, each county was designated roads or portions of roads for which it agreed to provide routine maintenance and signage. The Road Agreement described Frontier's portion as including a portion of Avenue 377, whereas Hayes' designated roads consisted of "Avenue 376A" and a portion of Avenue 377. The Road Agreement referred

to an attached map of Hayes that includes the border between Hayes and Frontier, with Hayes lying west of Frontier. Hayes' designated roads are highlighted in yellow on the map, forming a yellow line, and Frontier's designated roads are highlighted in blue on the map, forming a blue line. The blue line appears to run along the county line, whereas the yellow line mostly does not. The map reflects waterways but otherwise does not show topography of the ground. "Dry Creek" and "Willow Creek" intersect with the yellow line but not with the blue line. The yellow line and the blue line do not appear to directly connect as a continuous, north-south road. The yellow line on the map appears to end on the southeast corner of the map as "377 AVE" but quickly turns off to the west to an unidentified road. Avenue 376A is not designated on the map.

Exhibit B attached to the petition in error is the Proposed Bridge Agreement from Hayes that addresses the shared cost and planning of the bridge's replacement. The agreement does not state the location of the bridge.

Exhibit C attached to the petition in error reflects a letter from the Hayes County Attorney to the Frontier Board, giving notice by certified mail of the intent of the Hayes' board of commissioners (Hayes Board) to replace the bridge "located on Ave[nue] 377 where it crosses . . . Willow Creek and/or Dry Creek in the NE¼ of Section 13-T5N-R31W, Hayes." The letter stated that the bridge was covered by § 39-827 et seq. but did not elaborate on why. The letter also requested that Frontier provide funds for one-half of the cost and execute the Proposed Bridge Agreement.

Exhibit D attached to the petition in error represents that after Hayes replaced the bridge, the Hayes County Attorney sent a letter via certified mail to the Frontier Board, attaching a claim against Frontier for $183,109.50, representing the new total cost of the "County Bridge #C004306105 located on Ave[nue] 377." The Hayes County Attorney described the bridge as "one covered by [§] 39-827 et seq." (Emphasis omitted.)

The "claim" attached to exhibit D in itself is brief. It gives the "total due" of $183,109.50 and a "[d]escription" of "one-half (50%) of the net total costs expended by Hayes . . . to replace County Bridge #C004306105 located on county line road (ie, Ave[nue] 377) with a concrete box culvert." (Emphasis omitted.) The claim has a notarized signature of the Hayes Board chairman and includes numerous attachments consisting of invoices and other financial documents detailing the cost of the replacement.

(b) Transcripts

Hayes filed with the district court a praecipe for transcript addressed to the Frontier Board. It later filed a supplemental transcript. At a hearing before the district court, the transcripts were received by the district court as exhibits without objection. The transcripts included the documents identified as exhibits B, C, and D that were attached to the petition in error, as well as the minutes from the Frontier Board's meeting in which it denied Hayes' claim and its subsequent denial letter to the Hayes Board. The transcripts also contained a letter dated February 3, 2021, from the Hayes County Attorney to the Frontier County Attorney, which was not in the Frontier County clerk's file but had been included upon request.

In the February 3, 2021, letter, the Hayes County Attorney explained that the Hayes Board had determined it likely would need to replace the bridge "located on Ave[nue] 377 where it crosses the Willow Creek and/or Dry Creek in the NE¼ of Section 13-T5N-R31W, Hayes." The Hayes County Attorney asserted the bridge "is one covered by . . . § 39-827 et seq"; thus, "the [Hayes] Board intends to initiate discussions with the Frontier . . . Board in the very near future."

The minutes of the Frontier Board show that it met in a closed session and voted to disallow Hayes' claim. In a letter informing the Hayes Board of its denial of the claim, the Frontier Board did not contest that the bridge needed to be replaced but argued that under the bridge statutes, Frontier

was not obligated to pay for one-half of the expense. The Frontier Board described the bridge as "located in Hayes" and as a bridge that "has never been on Frontier['s] bridge inventory." It found that the bridge was "not over a stream which divides Frontier and Hayes . . . . The bridge is not located over a stream on a road on the county line, and the bridge is not located over a stream near a county line, in which both Frontier and Hayes . . . are equally interested." It recognized that the bridge was located "near" the county line but stated that the bridge did not benefit Frontier residents. Thus, Frontier was not "equally interested" in the bridge as required for § 39-827 to apply.

The Frontier Board elaborated that the bridge "[was] located off of the [c]ounty line on what appear[ed] to be Ave 376A" and opined that Frontier residents "hardly, if ever," traveled on Avenue 376A where the bridge needed to be replaced. In other words, "[t]he Frontier [Board's] position on County Bridge #C004306105 located in Hayes . . . is that the bridge does not benefit Frontier . . . residents."

The Frontier Board explained that in 2009 to 2010, it had spent $650,000 to replace a different bridge on "Road 379" that was "[v]ery close to the east of Road Ave 376A" and very close to the Hayes-Frontier county line. Frontier did not request compensation from Hayes for that bridge. The Frontier Board stated that the bridge it replaced is used frequently by residents of Frontier, Hayes, and other surrounding counties, thus making it unnecessary to utilize the Hayes bridge.

Finally, the Frontier Board reasoned that it should not have to pay for one-half of the cost of the bridge's replacement because it was without the financial means to do so. The Frontier Board asserted that due to Frontier's lack of available funds, many of Frontier's bridges needed repair or replacement but could not be fixed. The Frontier Board also stated that while it could not offer funds, Frontier had provided Hayes with supplies and had offered labor for the bridge's replacement.

(c) Arguments at Hearing on Petition in Error

At the hearing before the district court, Hayes explained it was there on a petition in error and asked the court to enter an order finding that the Frontier Board had erred in denying Hayes' claim for reimbursement for one-half of the cost of replacing the bridge. Hayes believed that the documents in the transcript would show that the bridge was located on a road that had been "identified by the parties previously as a county line road," even though the bridge itself "deviates from the county line, crosses Willow Creek, and the bridge itself is entirely in Hayes . . . by approximately 60 feet."

Frontier disputed that the bridge at issue was on a county line road. Frontier also disputed that it was equally interested in the bridge. Frontier noted that while initially there was some dispute between the parties over the district court's jurisdiction, given the "alternative ways for — for Hayes . . . to bring this," both parties had agreed to proceed "as a petition in error case." Frontier pointed out that this imposes a high standard of review.

(d) Briefs Before District Court

Hayes' brief in support of its petition contained an assignments of error section, asserting to the district court that the Frontier Board erred by (1) disallowing Hayes' claim; (2) finding the bridge is not located over a stream on a road on the county line; (3) considering the irrelevant evidence that Frontier did not have the financial means to pay for one-half of the bridge; and (4) considering Hayes' claim in an executive session without notice, effectively denying Hayes due process of law.

Hayes argued in its brief to the district court that while the bridge was not on the county line, deviating approximately 60 feet into Hayes, it was nevertheless "on a county line" pursuant to § 39-1403, and the Frontier Board erred in determining otherwise. Hayes also argued that the Frontier Board erred in finding that Frontier was not equally interested in the

bridge. Hayes asserted that Frontier's expenses for its own deficient bridges were erroneously considered because they were irrelevant under the statutory scheme. Finally, Hayes argued it was denied due process through the closed session of the Frontier Board, which allegedly violated Neb. Rev. Stat. § 84-1410 (Reissue 2024).

## 2. DISTRICT COURT'S DECISION

The district court "denied and dismissed" Hayes' petition in error on the grounds that there was a lack of "relevant evidence" in the transcript, i.e., evidence deriving from formal proof of facts pertaining to questions of who did what, where, when, how, why, and with what motive or intent. The district court found that the pleadings, the letters between the counties in the transcript, and the briefs were not "evidence." According to the district court, the only "evidence" in the transcript from the Frontier Board's meeting was Hayes' claim and its attachments. More specifically, the district court found that because Hayes failed to ask for an evidentiary hearing before the Frontier Board, there was no evidence of the location of the disputed bridge, which was necessary to establish the claim under § 39-827.

Hayes appeals the district court's decision to this court.

## III. ASSIGNMENTS OF ERROR

On appeal from the decision of the district court, Hayes assigns that the district court erred by (1) finding there was insufficient proof to locate the bridge to apply § 39-827, (2) disregarding judicial admissions contained in the pleadings, (3) finding that the Frontier Board's denial of its claim was appropriate, and (4) denying and dismissing its petition in error.

## IV. STANDARD OF REVIEW

[1] Compliance with Neb. Rev. Stat. §§ 25-1903 and 25-1905 (Reissue 2016) is jurisdictional.[2]

---

[2] *McNally v. City of Omaha*, 273 Neb. 558, 731 N.W.2d 573 (2007).

[2] In reviewing a decision based on a petition in error, an appellate court determines whether the inferior tribunal acted within its jurisdiction and whether the inferior tribunal's decision is supported by sufficient relevant evidence.[3]

[3] An administrative agency decision must not be arbitrary and capricious.[4]

[4] The reviewing court in an error proceeding is restricted to the record before the administrative agency and does not reweigh evidence or make independent findings of fact.[5]

[5] The evidence is sufficient, as a matter of law, if an administrative tribunal could reasonably find the facts as it did on the basis of the testimony and exhibits contained in the record before it.[6]

## V. ANALYSIS

The procedures governing reviews on petitions in error are found in Neb. Rev. Stat. §§ 25-1901 to 25-1908 (Reissue 2016 & Cum. Supp. 2024).

Section 25-1901 sets forth the district court's jurisdiction as an appellate court over a "judgment rendered or final order made by any tribunal, board, or officer exercising judicial functions and inferior in jurisdiction to the district court" and that the district court may "revers[e], vacat[e], or modif[y]" the judgment or order of said tribunal, board, or officer exercising judicial functions.

Section 25-1903 requires that the proceedings to obtain such reversal, vacation, or modification shall be by petition in error and that the petition in error shall set forth the errors complained of:

> The proceedings to obtain such reversal, vacation or modification shall be by petition entitled petition in error,

---

[3] *Landrum v. City of Omaha Planning Bd.*, 297 Neb. 165, 899 N.W.2d 598 (2017).

[4] *Douglas County v. Archie*, 295 Neb. 674, 891 N.W.2d 93 (2017).

[5] *Id*.

[6] *Id*.

filed in a court having power to make such reversal, vacation or modification, setting forth the errors complained of, and thereupon a summons shall issue and be served, or publication made, as in the commencement of an action.

Neb. Rev. Stat. § 25-1931 (Reissue 2016) provides that a petition in error shall be filed within 30 days of the rendition of the judgment or making of the final order complained of. Section 25-1905 describes that "[t]he plaintiff in error shall file with his or her petition a transcript of the proceedings or a praecipe directing the tribunal, board, or officer to prepare the transcript of the proceedings. The transcript shall contain the final judgment or order sought to be reversed, vacated, or modified." Section 25-1906 provides that clerks of every court of record shall "furnish an authenticated transcript of the proceedings, containing the judgment or final order of such courts, to either of the parties to the same, or to any person interested in procuring such transcript."

[6,7] Rather than a "review on appeal" under Neb. Rev. Stat. §§ 25-1911 to 25-1937 (Reissue 2016 & Cum. Supp. 2024), a petition in error is in the nature of a new action, in that a petition in error is required to be perfected, with a summons required to be issued upon the written praecipe of the petitioner in error.[7] But a petition in error is not a right of action and does not exist at common law; it is a legislatively created method of review.[8]

[8-10] A petition in error in the district court to review a judgment or final order of an inferior tribunal is in its nature an independent proceeding having for its purpose the removal of the record from an inferior to a superior tribunal to determine whether the judgment or final order entered is in accordance with the law.[9] Thus, a petition in error is in a broader

---

[7] *Champion v. Hall County*, 309 Neb. 55, 958 N.W.2d 396 (2021).

[8] *Id.*

[9] *Id.*

sense an appeal, because it is the removal of proceedings from one court or tribunal to another for review.[10] The reviewing court may reverse, vacate, or modify the lower judicial tribunal's judgment or final order for error on the record.[11]

[11,12] In an error proceeding in the district court, the district court must look to the transcript of the proceedings of the inferior tribunal filed with the petition in error to ascertain what happened there.[12] Such a proceeding is ordinarily tried on the appropriate and relevant questions of law set out in the petition in error and appearing in the transcript.[13] A petition in error is not a trial de novo.

[13-15] We have explained that § 25-1903 requires that a petition in error contain the assignments of errors complained of.[14] Further, the alleged errors in a petition in error must be assigned with particularity.[15] Alleged errors argued in a brief before the district court but not assigned in the petition in error will not be considered.[16]

---

[10] *Id*.

[11] *Id*.

[12] *Id*.

[13] *In re Estate of Vance*, 149 Neb. 220, 30 N.W.2d 677 (1948), citing *In re Estate of Berg*, 139 Neb. 99, 296 N.W. 460 (1941).

[14] See, *Bickford v. Board of Ed. of Sch. Dist. #82*, 214 Neb. 642, 336 N.W.2d 73 (1983); *McDonald v. Rentfrow*, 171 Neb. 479, 106 N.W.2d 682 (1960) (superseded by statute on other grounds as stated in *Lancaster County v. Slezak*, 317 Neb. 157, 9 N.W.3d 414 (2024)); *From v. Sutton*, 156 Neb. 411, 56 N.W.2d 441 (1953) (superseded by statute on other grounds as stated in *Lancaster County v. Slezak, supra* note 14); *Ainsworth v. Taylor*, 53 Neb. 484, 73 N.W. 927 (1898); *Lean v. Andrews*, 38 Neb. 656, 57 N.W. 401 (1894); *Cox v. Douglas Cty. Civ. Serv. Comm.*, 6 Neb. App. 748, 577 N.W.2d 758 (1998). See, also, *Abboud v. Lakeview, Inc.*, 237 Neb. 326, 466 N.W.2d 442 (1991).

[15] See *Wiseman v. Ziegler*, 41 Neb. 886, 60 N.W. 320 (1894). See, also, e.g., *Bickford v. Board of Ed. of Sch. Dist. #82, supra* note 14.

[16] See *Phoenix Ins. Co. v. King*, 54 Neb. 630, 74 N.W. 1103 (1898).

Thus, in *Ainsworth v. Taylor*,[17] we said that the language of § 25-1903 clearly requires that "each alleged error shall be specially set forth in the petition in error."[18] We elaborated that "[t]he strictness with which the requirements of specific assignments has been enforced is amply illustrated in every volume of the reports of the opinions of this court."[19] While *Ainsworth* was docketed as an appeal after an unsuccessful petition in error to our court, we said: "There is perceived no reason why all this strictness should be dispensed with, merely because an unsuccessful litigant chooses to have his case docketed as an appeal case rather than as an error proceeding in the supreme court"; therefore, we were "precluded from considering the errors argued in the brief of appellant," and the judgment of the district court was affirmed.[20]

In *Bickford v. Board of Ed. of Sch. Dist. #82*,[21] we applied our statements in *Ainsworth* to an appeal from the district court's decision on a petition in error from a decision of a county's board of education. The district court found that the allegation that the board's decision violated the petitioner's first amendment rights was raised in his brief but not in his petition in error. We agreed that the petitioner's first amendment argument was "not raised or mentioned in any manner whatsoever in the petition in error" and repeated that "'each alleged error shall be specially set forth in the petition in error.'"[22]

In *Turnbull v. County of Pawnee*,[23] the Nebraska Court of Appeals observed that a petition in error purporting to set

---

[17] *Ainsworth v. Taylor, supra* note 14.

[18] *Id.* at 487, 73 N.W. at 928.

[19] *Id*. at 487-88, 73 N.W. at 928.

[20] *Id*. at 488, 73 N.W. at 929.

[21] *Bickford v. Board of Ed. of Sch. Dist. #82, supra* note 14.

[22] *Id.* at 652, 336 N.W.2d at 79.

[23] *Turnbull v. County of Pawnee*, 19 Neb. App. 43, 52, 810 N.W.2d 172, 179 (2011), *disapproved on other grounds, Champion v. Hall County, supra* note 7.

forth a claim of breach of contract with supporting factual allegations that the petitioner's grievance had been denied by the county's board of commissioners "did not assert anywhere in the complaint that the Board had committed any errors to be complained of" as required by § 25-1903. The Court of Appeals observed that the petitioner's "attempt to cast this case as a breach of contract action does not change the fact that at its core, the action was brought in the district court to appeal the decision of the administrative body, the Board, denying his grievance,"[24] requiring that the petition in error set forth the errors complained of.

Like in *Turnbull*, Hayes' petition in error appears in the form of a complaint in an action, making factual allegations and setting forth the relief sought, but not setting forth specific assignments of how the lower tribunal allegedly erred. As such, it is difficult to identify what errors were set forth in the petition in error as required by § 25-1903.

Hayes' petition in error generally alleged that the Frontier Board's denial of its claim "was in error, was arbitrary and capricious and contrary to law, including without limitation . . . § 39-827 et seq." (Emphasis omitted.) Standing alone, this sets forth no more than a broad legal conclusion.

This broad legal conclusion was insufficient to raise any error relating to due process and the closed session of the Frontier Board, which were nowhere referred to in the petition in error. Likewise, even viewing the allegations of the petition in error in totality, Hayes' petition in error did not raise any error pertaining to whether the bridge is located over a stream near a county line or whether both Hayes and Frontier were equally interested in the bridge—which we note likewise were not raised in the assigned errors of Hayes' brief to the district court.

Viewed generously in its totality, Hayes' brief in support of its petition in error raised one error: that the Frontier Board

---

[24] *Id.* at 49, 810 N.W.2d at 177.

erred by concluding that the bridge was not located "on a road on a county line," to wit, Avenue 377. Relevant to this error is the allegation of the petition in error that the road was not physically on the county line. The petition in error did not refer to § 39-1403 but referred to the Road Agreement, which was attached to the petition and thus formed part of the allegations. The map attached to the Road Agreement indicated that, at least in 2014, Hayes and Frontier believed the roads highlighted on the attached map were county line roads.

[16-18] We limit our review to these allegations and what has been assigned and argued in relation thereto. Compliance with §§ 25-1903 and 25-1905 is jurisdictional.[25] Where a lower court lacks jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.[26] And where a cause has been appealed to a higher appellate court from a district court exercising appellate jurisdiction, only issues properly presented to and passed upon by the district court may be raised on appeal to the higher court.[27] Finally, to be considered by an appellate court, the party asserting an alleged error must both specifically assign and specifically argue it in the party's initial brief.[28]

Hayes does not assign and argue on appeal that Frontier was liable for the bridge replacement pursuant to § 39-829 and the Road Agreement to supply the needed gravel and routine maintenance to their respective designated portions of the county line road. This is perhaps because the bridge in question is on the yellow line on the map designated for Hayes to maintain, whether it be Avenue 377 or Avenue 376A.

---

[25] *McNally v. City of Omaha, supra* note 2.

[26] *Muller v. Weeder*, 313 Neb. 639, 986 N.W.2d 38 (2023).

[27] *Miller v. Horton*, 253 Neb. 1009, 574 N.W.2d 112 (1998). See, also, *Bickford v. Board of Ed. of Sch. Dist. #82, supra* note 14.

[28] *132 Ventures v. Active Spine Physical Therapy*, 318 Neb. 64, 13 N.W.3d 441 (2024).

We note that Hayes also does not assign and argue on appeal to this court that the district court erred in reasoning that the only "evidence" in the record was Hayes' claim and its attachments. However, we must look to the transcript of the proceedings of the inferior tribunal filed with the petition in error to ascertain what happened there.[29] A petition in error is the removal of the record from an inferior to a superior tribunal to determine whether the judgment or final order entered is in accordance with the law[30] and whether the tribunal could reasonably find the facts as it did based on the record before it.[31]

Thus, the question before us is whether, on the record from the Frontier Board, its judgment that the bridge was not on a county road as defined by § 39-1403 was in accordance with the law and was not arbitrary and capricious. Hayes generally argues that the claim and its attachments fail to provide sufficient, competent evidence to support the Frontier Board's denial of Hayes' claim. Hayes also focuses heavily on the Frontier Board's allegedly erroneous conclusion that the bridge was on Avenue 376A. Hayes argues its claim and attachments provided proof that the bridge was located on Avenue 377 and there was no evidence to support the Frontier Board's finding that it was on Avenue 376A. Hayes relatedly assigns and argues that the district court erred in disregarding Frontier's judicial admissions in its answer to the petition in error that the bridge is located on Avenue 377 approximately 60 feet west of the county line, "as they were directly relevant to the issue of the location of the bridge at issue, and the continued recognition and acknowledgement by the parties of the 'county line road.'"[32]

---

[29] See *Champion v. Hall County, supra* note 7.

[30] See *id.*

[31] See *Douglas County v. Archie, supra* note 4.

[32] Brief for appellant at 15.

Hayes never explains the legal significance of the difference between a location on Avenue 377 versus Avenue 376A. Hayes simply concludes that the district court should have reversed the Frontier's Board's decision because it was based on "an erroneous finding that was not supported by any of the relevant evidence before it" and was "in relation to the most critical issue."[33]

[19,20] Hayes misunderstands our standard of review. On a petition in error, the district court acts in an appellate capacity and employs the same deferential standard of review that an appellate court uses.[34] Agency action is arbitrary and capricious if it is taken in disregard of the facts or circumstances of the case, without some basis which would lead a reasonable and honest person to the same conclusion.[35] The administrative body's decision is not arbitrary and capricious if reasonably based on an absence of proof by the claimant who has the burden to prove its claim. Absent a statute stating otherwise, the party asserting the claim has the burden to present sufficient evidence to support it.[36] A claimant on a petition in error cannot gain reversal of a denial of the claim by failing to submit sufficient, relevant evidence to the administrative body to support it.

To demonstrate a right to reimbursement from Frontier, Hayes had the burden of proof with respect to any facts to support Frontier's liability under the bridge statutes. We agree with the lower court that Hayes failed to sustain this burden. Thus, the record on appeal supports the Frontier Board's denial of Hayes' claim.

[21,22] Hayes provides no authority for the premise that an interlocal agreement, entered into voluntarily to maintain a road the parties deemed "on the border of said Counties,"

---

[33] *Id*.

[34] *Douglas County v. Archie, supra* note 4.

[35] *Lancaster County v. Slezak, supra* note 14.

[36] See 31A C.J.S. *Evidence* § 185 (2020).

is decisive of whether that road is on a county line as defined by § 39-1403 for a purpose not encompassed by the agreement. And there is no merit to Hayes' contention that the district court should have recognized a judicial admission from Frontier's answer to the petition in error that the bridge was on Avenue 377. "[N]othing can be added to or taken from the record by simple averment in a petition in error, and extrinsic facts pleaded therein do not form part of the record in which an order is sought to be reversed."[37] An answer or other pleading by a defendant in error can have no function other than to advise the court of events that have occurred after the order appealed from, such as acceptance of benefits.[38]

In any event, whether it is Avenue 377 or Avenue 376A, the map attached to the Road Agreement shows that the road the bridge is on is not physically on the county line. Even if we assume that the entirety of the road—which is half highlighted in blue and half highlighted in yellow—is the same road, something that would be contrary to the map and the designations of the roads to be maintained under the Road Agreement, there is a significant portion of that road which is not on the county line. And the map does not indicate topography. Thus, there was insufficient evidence before the Frontier Board to determine that the bridge is on a road that shall be designated a county road pursuant to § 39-1403 because it was

> laid out on a county or township line . . . although, owing to the topography of the ground along the county or township line, or at the crossing of any stream of water, the proper authorities, in establishing or locating such road, may have located a portion of the same to one side of such county or township line.

As such, it was not arbitrary and capricious for the Frontier Board to find that the bridge is not located over a stream on a road on the county line. It is unnecessary to determine

---

[37] *Olsen v. Grosshans*, 160 Neb. 543, 546-47, 71 N.W.2d 90, 95 (1955).

[38] *Cox v. Douglas Cty. Civ. Serv. Comm., supra* note 14.

whether, pursuant to § 39-827, the additional requirement of equal interest in the bridge applies to bridges on roads on the county line.

Like the district court, we hold, albeit for somewhat different reasons, that there is no merit to Hayes' petition in error from the Frontier Board's decision. The district court did not err by failing to reverse the decision. However, we find that the district court erred in its disposition that "denied and dismissed" the petition in error. The appropriate disposition was to affirm.

## VI. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court, modifying its disposition from "denied and dismissed" to "affirmed."

Affirmed as modified.